IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
2012 APR 26 PH 2: 10
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | | |
|---|---|---|
| ZAKIA SMITH | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| TENNESSEE STATE UNIVERSITY, | ) | Jury Demand |
| and TENNESSEE BOARD OF | ) | |
| REGENTS. | ) | |
| | ) | |

## COMPLAINT

Comes now Zakia Smith, Plaintiff, bringing this civil action against defendants Tennessee State University ("TSU") and Tennessee Board of Regents ("TBR"), (collectively "Defendants") asserting discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"). For her causes of action, Ms. Smith states as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action for declaratory relief, prospective injunctive relief, monetary damages, equitable relief, and/or damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4). Venue is properly vested in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391, as all events alleged herein occurred in Nashville, Davidson County, Tennessee.

2. Plaintiff has met all conditions precedent to the filing of this complaint. Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) as to her Title VII claims on or about February 4, 2011. Plaintiff

filed an internal grievance with TSU to the Director of the Office of Equity, Diversity and Compliance ("EDC") on or about November 2010. The EEOC dated Ms. Smith's right-to-sue letter on January 26, 2012. Plaintiff has filed this civil action within ninety days after receiving her right-to-sue sue letter. Pursuant to this notice, Plaintiff brings her Title VII claims in this matter.

## PARTIES

3. Plaintiff is a citizen and resident of Davidson County, Tennessee.

4. TSU is an educational institution with its principal place of business in Nashville, Tennessee. TSU employs more than 500 individuals. TBR operates TSU and implements policies affecting the terms, conditions, privileges, and benefits of TSU employees' employment.

5. Plaintiff is presently an employee of Defendants as a Call Center Specialist within TSU's University Call Center.

## FACTS

6. Plaintiff was, at all relevant times, an employee of Defendants.

7. On or about January 2008, Plaintiff was hired by Defendants as a Financial Aid Counselor.

8. Plaintiff's position as Financial Aid Counselor was within TSU's Financial Aid Department.

9. As a Financial Aid Counselor, Plaintiff's job responsibilities were professional in nature, and included coordinating financial aid programs, processing financial aid forms, auditing, and counseling students and others about Financial Aid matters.

10. As a Financial Aid Counselor, Plaintiff performed her job duties satisfactorily and received positive performance evaluations, pay increases, and increased job responsibilities, due largely to her strong job performance and high volume of productivity as a Financial Aid Counselor.

11. On or about July 2010, Defendants announced a job opening for the Coordinator of State and Private Funds.

12. The Coordinator of State and Private Funds is a position within the TSU Financial Aid Department.

13. The Coordinator of State and Private Funds is higher within the hierarchy of TSU's Financial Aid Department than the position of Financial Aid Counselor. The Coordinator of State and Private Funds has a higher salary than the position of Financial Aid Counselor.

14. If Plaintiff was selected as the Coordinator of State and Private Funds, it would have been a promotion above her position as a Financial Aid Counselor.

15. Defendants received applications from several candidates for the position of Coordinator of State and Private Funds, including Plaintiff.

16. Defendants established a three-member interview and selection panel (the "panel") to interview and select the best candidate from the pool of eligible candidates for the position of Coordinator of State and Private Funds.

17. The three-member interview and selection panel consisted of Associate Financial Aid Director Michael Jones, and University Directors Tiffany Steward and Mark Gunter.

18. Plaintiff was interviewed by the three-member interview and selection panel, and was selected by members of the panel as the candidate for the position.

19. Panel Member and Associate Financial Aid Director Michael Jones told Plaintiff that she was unanimously selected by the three-member interview and selection panel for the position of Coordinator of State and Private Funds.

20. Plaintiff was acknowledged by Defendants to be qualified for the position of Coordinator of State and Private Funds.

21. The panel was not initially implemented as an "advisory" panel.

22. The panel was implemented by Defendants to select the candidate for the position of Coordinator of State and Private Funds.

23. Plaintiff's selection by the panel was told to Defendants Financial Aid Director Amy Wood following the interviews of all eligible candidates for the position of Coordinator of State and Private Funds.

24. The panel determined that Plaintiff was the most qualified and best person for the position of Coordinator of State and Private Funds.

25. Brian Keister, a Caucasian (White) male, also interviewed with the panel as an eligible candidate.

26. Financial Aid Director Amy Wood ("Wood") did not accept the Panel's selection of Plaintiff for the position of Coordinator of State and Private Funds, and expressed her desire not to have Plaintiff in the position.

27. Wood refused to give the position of Coordinator of State and Private Funds to Plaintiff.

28. Wood told financial aid personnel that she refused to train Plaintiff for the position.

29. Ultimately, Wood selected Brian Keister for the position of Coordinator of State and Private Funds.

30. Brian Keister had less tenure within TSU's Financial Aid Department than Plaintiff at the time of his selection as Coordinator of State and Private Funds.

31. Brian Keister was not as proficient in his previous job of Loan Counselor (prior to selection as Coordinator of State and Private Funds) than Plaintiff was in her position as a Financial Aid Counselor at the time of his selection as Coordinator of State and Private Funds.

32. Brian Keister was not as highly-educated as Plaintiff at the time of his selection as Coordinator of State and Private Funds. Plaintiff had a Master's Degree in Business Administration at the time Mr. Keister was selected for the position of Coordinator of State and Private Funds. At the time of his selection, Mr. Keister only possessed an undergraduate degree.

33. Brian Keister had less experience in university financial aid administration than Plaintiff at the time of his selection as the Coordinator of State and Private Funds.

34. Brian Keister's previous work experience related to sales, not university financial aid administration.

35. Plaintiff had experience in university financial aid administration during her tenure with Defendants and through previous employment.

36. Financial Aid Director Amy Wood has made previous comments regarding her intentions to "turn the place [the TSU Financial Aid Department] white."

37. Financial Aid Director Amy Wood has made previous hiring and promotion decisions averse to the interest of female candidates.

38. Said refusal to promote and select Plaintiff rather than Brian Keister was based on Plaintiff's race, Black.
5

39. Said refusal to promote and select Plaintiff rather than Brian Keister was based on Plaintiff's sex, female.

40. Financial Aid Director Amy Wood is a Caucasian (White).

41. Brian Keister is a Caucasian (White) male.

42. Plaintiff is an African-American (Black) female.

43. On or about November 2010, Plaintiff filed an internal grievance with Defendants to the Director of the Office of Equity, Diversity and Compliance ("EDC"). Her internal grievance alleged unfairness behind her denial for the position of Coordinator of State and Private Funds. Defendants conducted an investigation of the internal grievance.

44. Defendants completed its investigation on or about December 9, 2010, after talking with Financial Aid Director Amy Wood about Plaintiff's claims.

45. On or about February 4, 2011, Plaintiff filed Charge No. 494-2011-00337 with the Equal Employment Opportunity Commission alleging violations of Title VII.

46. Plaintiffs EEOC charge alleged both race and sex discrimination.

47. Plaintiff also alleged retaliation at the time, but the EEOC did not check the box on the final charge form.

48. Defendants were aware of the filing of Plaintiff's EEOC charge.

49. Defendants retaliated against Plaintiff for filing her internal grievance and EEOC charge in violation of Title VII. Plaintiff subsequently reported incidents of retaliation to EEOC Investigator Dawn Turner following the filing of her internal grievance and EEOC charge. Defendants have since become hostile in their interactions since the filing of her internal grievance and EEOC charge, when Defendants were not typically hostile towards

her before. Defendants have denied routine requests for Plaintiff's use of leave and vacation time since the filling of her internal grievance and EEOC charge, when it did not typically make such denials before. Defendants have given Plaintiff uncharacteristically low performance evaluations since the filing of her internal grievance and EEOC charge, when she received traditionally high marks on her performance evaluations. Defendants subjected her to severe and pervasive retaliatory harassment and conduct that would deter a reasonable employee in her position from making or supporting a charge of discrimination.

50. Wood directed one of Plaintiff's Supervisor's to give her a lower performance evaluation than she deserved after Plaintiff filed her internal grievance and EEOC charge in retaliation.

51. On or about July 2011, Plaintiff was informed by Vice-President Cynthia Brooks that that she was being reassigned to the Defendants Call Center Department. Plaintiff was told by Vice-President Cynthia Brooks that she was being reassigned because it was a "better fit."

52. Plaintiff's supervisor in the Call Center is Call Center Director Chinese Harris.

53. The Call Center Department is a separate department from Financial Aid Department.

54. Plaintiff's duties in the Call Center are not professional in nature (are largely clerical), and primarily consist of answering and transferring incoming telephone calls to TSU. Plaintiff has lost computer access privileges since her assignment to the Call Center that she had while employed in the Financial Aid Department. Through Call Center Management, Defendants have continued its retaliatory actions towards Plaintiff since her arrival in the Call Center through Call Center employees and outside employees. Her

negative treatment by Defendants has continued since her assignment to the call center, including denial of workplace benefits, accommodations, and adverse treatment.

55. Presently, Plaintiff works as a Call Center Specialist within the TSU Call Center.

56. Plaintiff's position has less prestige, and is considered a lesser job, than Brian Keister's position in Financial Aid, as Coordinator of State and Private Funds.

57. Plaintiff's present position has less prestige, is considered a lesser job, and is far less arduous than Plaintiff's position in the Financial Aid Department. Plaintiff's reassignment to the Defendants Call Center was a demotion by any reasonable employee.

58. Plaintiff's reassignment to the Call Center is materially adverse to her for engaging in activity protected by Title VII, and Defendants actions certainly would dissuade a reasonable worker from making or supporting a charge of discrimination.

59. Plaintiff's subsequent hostile and negative treatment has been materially adverse and would be to any reasonable employee, and would dissuade a reasonable worker from making or supporting a charge of discrimination or any other activity protected by Title VII.

60. With respect to the conduct described herein, Defendants acted willfully and maliciously or with reckless indifference to Plaintiff's protected rights.

61. As a result of the conduct described in this complaint, Ms. Smith has lost income and other privileges and benefits of employment that she otherwise would have received; suffered embarrassment, humiliation, emotional distress and mental anguish, stress and anxiety, loss of employment, loss of career advancement prospects, damage to her reputation, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

62. Plaintiff continues to suffer economically, emotionally, and professionally as a result of Defendants actions.

## CLAIMS

63. Plaintiffs incorporate all of the paragraphs above as if set forth in each count below.

### COUNT 1 & 2: DISCRIMINATION IN VIOLATION OF TITLE VII

64. Based on the conduct described in this Complaint, Defendant is liable for discrimination based on race in violation of Title VII.

65. Based on the conduct described in this Complaint, Defendant is liable for discrimination based on sex in violation of Title VII.

66. The Defendant has subjected Plaintiff to a denial of promotion/failure to hire, hostile work environment and harassment, based on a discriminatory motivation (race) in violation of Title VII.

67. The Defendant has subjected Plaintiff to a denial of promotion/failure to hire, hostile work environment and harassment, based on a discriminatory motivation (sex) in violation of Title VII.

68. Plaintiff is a member of a protected class, African-American.

69. Plaintiff is a member of a protected class, female.

70. Plaintiff was objectively qualified for the position of Coordinator of State and Private Funds.

71. Plaintiff was considered, qualified, and denied the promotion to the position of Coordinator of State and Private Funds from her position as a Financial Aid Coordinator.

72. Defendants selected, Brian Keister, a white male, for the position of Coordinator of State and Private Funds despite Plaintiff's superior qualifications and unanimous selection by the three-member interview and selection panel as the best person for the job.

73. Defendants' intentional conduct constitutes reckless indifference to Plaintiffs' federally protected rights.

74. Defendants conduct harmed and caused damage to Plaintiff.

75. The actions described above constitute unlawful harassment, discrimination (including failure to promote), hostile work environment based on race and sex in violation of Title VII.

## COUNT 3: RETALIATION IN VIOLATION OF TITLE VII

76. Based on the conduct described in this Complaint, Defendant is liable for retaliation in violation of Title VII.

77. In filing her charges of discrimination against Defendant, Plaintiff has engaged in activity protected under Title VII.

78. In filing a retaliation charge with the Defendant and EEOC, Plaintiff has engaged in activity protected under Title VII.

79. At all relevant times, Defendant has been aware that Plaintiff engaged in activity protected under Title VII.

80. After Plaintiff engaged in activity protected under Title VII, Defendant took one or more adverse employment actions against Plaintiff by subjecting her to retaliation.

81. A causal connection exists between Plaintiff's activity protected under Title VII and the adverse employment actions taken by Defendant against her.

82. Defendant's intentional conduct constitutes reckless indifference to Plaintiffs' federally

10
Case 3:12-cv-00413   Document 1   Filed 04/26/12   Page 10 of 12 PageID #: 10

protected rights.

83. Defendant's conduct harmed and caused damage to Plaintiffs.

84. The actions described above constitute retaliation in violation of Title VII.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request the following legal and equitable relief:

1. A permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert or participation with Defendants, from engaging in any employment which unlawfully discriminates on any basis, particularly with regards to race and sex, or which constitutes retaliation, as authorized by Title VII.

2. Permanently order Defendants to undergo mandatory and regular training on the laws governing employment discrimination.

3. Permanently order Defendants to post all available internal reporting procedures as well as EEOC reporting procedures in a manner that is conspicuous to all employees.

4. An Order directing Defendants to make Plaintiff whole by providing all forms of back pay, front pay, pre-judgment interest, post-judgment interest, expenses, costs, and reasonable attorney's fees (including expert fees) in amounts to be determined at trial, as authorized by Title VII.

5. An Order directing Defendants to pay to Plaintiff compensatory damages for her losses from defendants unlawful employment practices, including, but not limited to, past pecuniary losses, lost wages from denial of promotion, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial, as authorized by Title VII.

6. Such other legal or equitable remedies as the Court deems proper.

7. For a jury to hear this cause of action.

Respectfully submitted,

Zakia Smith
2945 Primrose Circle
Nashville, TN 37212

Plaintiff